# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVIS DENNING, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-18-813-G |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Travis Denning brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _"),[2] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

## PROCEDURAL HISTORY

Plaintiff protectively filed his DIB application on October 15, 2015, alleging a disability onset date of January 12, 2015. R. 13, 178-79. After his request was denied initially and on reconsideration, R. 13, 56-67, 68-84, a video hearing was held before an

---

[1] The current Commissioner is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

administrative law judge ("ALJ") on August 24, 2017. R. 28-55. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 49-54. The ALJ issued an unfavorable decision on November 17, 2017. R. 10-27.

ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 12, 2015, the alleged disability onset date. R. 15. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease and left shoulder degenerative joint disease status post rotator cuff. R. 15-16. The ALJ additionally found that Plaintiff's headaches, essential hypertension, chronic pain syndrome, and tinea versicolor were nonsevere. R. 16. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments. R. 16-19. The ALJ found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can stand or walk up to four hours and sit about six hours in an eight-hour workday. [Plaintiff] can frequently balance and occasionally climb, stoop, kneel, crouch, crawl, and he can do overhead reaching bilaterally.

2

R. 16. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 19.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 20-21. Relying upon the VE's testimony regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light occupations such as cashier II and small product assembler, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 20-21. Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 21.

Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable decision of the ALJ stands as the Commissioner's final decision. R. 1-6; *see* 20 C.F.R. § 404.981.

STANDARD OF REVIEW

This Court's judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if

there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," in determining whether the ALJ's decision is supported by substantial evidence. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). Though a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff submits in this appeal that the ALJ's step-five decision is not supported by substantial evidence because there are unexplained conflicts between the occupations cited by the VE and ALJ and the definitions for those occupations in the *Dictionary of Occupational Titles* ("DOT"). *See* Pl.'s Br. (Doc. No. 15) at 3-7 (citing DOT 211.462-010 (cashier II), 1991 WL 671840 (4th rev. ed. 1991); DOT 706.684-022 (small product assembler), 1991 WL 679050). Plaintiff additionally argues that the ALJ committed legal error by failing to inquire into and elicit a reasonable explanation for the purported conflicts. *See id.* at 4-5.

Pursuant to Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000) and *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), an ALJ "must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a

determination of nondisability." *Haddock*, 196 F.3d at 1091; *see* SSR 00-4p, 2000 WL 1898704, at *2; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (explaining that SSR 00-04p "essentially codifies *Haddock*"). The ALJ has an "affirmative responsibility to ask about any possible conflict between the VE . . . evidence and information provided in the DOT" and, if the VE's testimony appears to conflict with the DOT, to "obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *2, 4; *see Haddock*, 196 F.3d at 1091. If the ALJ chooses to rely on VE testimony that is inconsistent with the DOT, the ALJ must "explain in the determination or decision how he or she resolved the conflict." SSR 00-4p, 2000 WL 1898704, at *4.

Both SSR 00-4p and *Haddock* articulate two non-exhaustive examples of "reasonable explanations" for such conflicts: (1) "the job the VE is testifying about is not included in the [DOT], but is documented in some other acceptable source," and (2) "a specified number or percentage of a particular job is performed at a lower RFC level than the [DOT] shows the job generally to require." *Haddock*, 196 F.3d at 1091-92; *see* SSR 00-4p, 2000 WL 1898704, at *2-3 (explaining that the DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings" and that a VE "may be able to provide more specific information about jobs or occupations than the DOT").

I. *The VE's Testimony and the ALJ's Response*

During the August 24, 2017 hearing, the ALJ posed a hypothetical to the VE consistent with Plaintiff's RFC. R. 51-52. The VE determined that an individual with Plaintiff's RFC could perform the light occupation of cashier II, "specifically performed in

5

a booth setting." R. 51. With this qualification in mind, the VE reduced the number of cashier II jobs available in the national economy by the percentage of cashier II jobs not performed in a booth setting. R. 51. ("I noticed around seven percent of these jobs are performed in a booth setting. After a 93 percent reduction in numbers, there would be 115,000 jobs in the nation."). The VE similarly determined that an individual with Plaintiff's RFC could perform small product assembler jobs that "allow a sit/stand option or . . . could be performed sitting or standing." R. 51-52. The VE then reduced the number of small product assembler jobs available in the national economy by the percentage that did not allow a sit/stand option. R. 52 ("Those account for around 50 percent of the [small product assembler] jobs. After a reduction, that would [be] 95,000 jobs in the nation.").

The ALJ did not expressly inquire at the hearing whether the VE's testimony was consistent with the DOT. In his written decision, however, the ALJ stated that "[p]ursuant to SSR 00-4p, I have determined that the [VE's] testimony is consistent with the information contained in the [DOT]." R. 20. Comporting with the VE's reductions to the number of available jobs, the ALJ found that there were 115,000 cashier II jobs available in the national economy and 95,000 small product assembler jobs available in the national economy that Plaintiff could perform. R. 20.

## II. Whether the VE's Testimony Conflicts with the DOT

Plaintiff's argument is premised on an alleged conflict between the VE's testimony and the DOT. Specifically, Plaintiff objects that the DOT's descriptions for cashier II and small product assembler do not "address the ALJ's RFC for light work and only standing four hours—not the six hours the DOT defines—nor does it address a limitation on

6

overhead reaching." Pl.'s Br. at 4. Plaintiff's argument, however, fails to illustrate the existence of a conflict.

Under 20 C.F.R. § 404.1567(b) and SSR 83-10, 1983 WL 31251, *5-6 (1983), light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b) (emphasis added); *see* SSR 83-10, 1983 WL 31251, *5-6. Social Security Ruling 83-10 further provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, *6.

While these definitions would preclude Plaintiff—who is limited to four hours of standing and walking in an eight-hour workday—from jobs requiring a full range of light work, the DOT descriptions for cashier II and small product assembler do not specifically require the full range of light work. Rather, they state that the strength level required is "light work" and that "a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; *or* (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." DOT 211.462-010, 1991 WL 671840 (emphasis added); DOT 706.684-022, 1991 WL 679050. Because the DOT provides that

7

a cashier II job and small product assembler job may demand only "sitting most of the time [with] pushing and/or pulling of arm or leg controls," it is not apparent that Plaintiff's walking and standing limitation is inconsistent with the DOT's specified requirements for these two jobs. *See Ronald David H. v. Berryhill*, CIVIL ACTION NO. 18-2219-JWL, 2019 WL 1002048, at *14 (D. Kan. Mar. 1, 2019) (finding no conflict where VE testified that plaintiff with 4-hour walking limitation could perform occupation categorized in DOT as "light work" because, "[b]y [the DOT's] definition, light work requires only a good deal of walking or standing" (emphasis omitted)).

In any event, even if the Court were to assume that the VE's testimony conflicts with the DOT in this respect, the VE provided what was described as a "valid explanation" by the Tenth Circuit in *Haddock* for the purported conflict. As both SSR 00-4p and *Haddock* explain, the DOT lists "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," and, accordingly, one valid explanation for any conflict between the DOT and VE testimony is "that a specified number or percentage of a particular job is performed at a lower RFC level than the [DOT] shows the job generally to require." SSR 00-4p, 2000 WL 1898704, at *4; *Haddock*, 196 F.3d at 1091-92. Here, the VE expressly acknowledged that only a percentage of cashier II and small product assembler jobs would accommodate Plaintiff's standing and walking limitations and reduced the number of available jobs accordingly. R. 51-52. Plaintiff does not explain why the VE's reduction of the percentage of available cashier II and small product assembler jobs in accordance with Plaintiff's limitations would not fall precisely within this "valid explanation" for a conflict.

Similarly, while the cashier II and small product assembler occupations require frequent reaching under the DOT, the DOT does not "make a clear distinction between 'reaching' and 'reaching overhead.'" *Lawson v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-1139-SM, 2018 WL 3080092, at *6 (W.D. Okla. May 25, 2018) (R. & R.), *adopted sub nom. Lawson v. Berryhill*, No. CIV-17-1139-C, 2018 WL 3077800 (June 21, 2018). In a similar case in which the occupational publication utilized by the VE did not separately classify overhead reaching, the Tenth Circuit observed that "even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007). In *Segovia*, the VE had identified two occupations requiring frequent reaching, though the claimant was limited to only occasional overhead reaching. *Id.* at 804. The Tenth Circuit found that "the VE's testimony does not conflict with the DOT . . . so much as it clarifies how [its] broad categorizations apply to this specific case." *Id.* Here, similarly, the VE was aware of Plaintiff's limitations in overhead reaching when she provided her relevant testimony. Because the DOT does not expressly distinguish "reaching" from "overhead reaching," the DOT's "broad categorizations" for cashier II and small product assembler jobs could encompass without conflict Plaintiff's limitation in bilateral overhead reaching. *See Lawson*, 2018 WL 3080092, at *6-7 (finding no conflict between RFC limitation to occasional reaching overhead and DOT requirement of frequent reaching); *Martin v. Berryhill*, No. CIV-18-267-STE, 2019 WL 639021, at *4-5 (Feb. 14, 2019) (same); *Mueller v. Colvin*, No. CIV-13-805-M, 2014 WL 3419313, at *6 (W.D. Okla. July 11, 2014) (same).

"Both the Tenth Circuit and this Court have previously found . . . that the fact that the DOT does not specifically address a certain limitation in its descriptions for the jobs relied upon by the VE and the ALJ does not necessarily establish an actual 'conflict' between the two sources of information." *Nguyen v. Colvin*, No. CIV-15-973-R, 2016 WL 4384373, at *8 (W.D. Okla. July 28, 2016) (R. & R.), *adopted*, 2016 WL 4384799 (W.D. Okla. Aug. 16, 2016). Recognizing that "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every . . . situation," this Court "has repeatedly declined to find the existence of a conflict when the VE's testimony addressed a specific limitation that the DOT did not." *Segovia*, 226 F. App'x at 804 (internal quotation marks omitted) (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000)); *Harper v. Berryhill*, No. CIV-16-1173-SLP, 2017 WL 6378020, at *3 (W.D. Okla. Nov. 28, 2017), *adopted*, 2017 WL 6375982 (Dec. 13, 2017); *see, e.g.*, *Nguyen*, 2016 WL 4384373, at *8; *Mueller*, 2014 WL 3419313, at *6; *Musgrave v. Astrue*, No. CIV-09-1276-D, 2010 WL 3749428, at *4-5 (W.D. Okla. Aug. 23, 2010) (R. & R.), *adopted*, 2010 WL 3749432 (W.D. Okla. Sept. 21, 2010); *Calip v. Astrue*, CIV-08-15-L, 2009 WL 113011, at *7-8 (W.D. Okla. Jan. 15, 2009).

Here, as well, Plaintiff has not established that the VE's testimony conflicted with the DOT job descriptions relied upon at step five or that the ALJ's step-five finding is unsupported by substantial evidence in this regard.

### III. Harmless Error

The Court additionally finds that, absent any conflict, the ALJ's failure to question the VE about conflicts or the resolution thereof is harmless error. Though ALJs have an

affirmative duty to ask VEs whether their testimony conflicts with the DOT, Courts have routinely found that an ALJ's failure to make this inquiry constitutes harmless error where no conflict exists. *See, e.g.*, *Poppa*, 569 F.3d at 1173 ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts."); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Harper*, 2017 WL 6378020, at *4.[3]

Thus, because Plaintiff has failed to show the existence of any conflicts requiring the ALJ's resolution, Plaintiff has not shown any prejudicial error requiring remand.

## CONCLUSION

The challenged findings are supported by substantial evidence in the record and do not reflect prejudicial legal error. The decision of the Commissioner is AFFIRMED. A separate judgment shall be entered.

---

[3] Interposed within his argument that the ALJ erred by failing to inquire into conflicts, Plaintiff asserts that "[i]t is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the Step 4 and 5 analysis to the VE, because in such cases, 'the remainder of the step four assessment takes place in the VE's head' and 'we are left with nothing to review.'" Pl.'s Br. at 5 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)). Because the entirety of Plaintiff's brief, other than this fleeting reference to step four, challenges the ALJ's determination at step five, Plaintiff's undeveloped suggestion of dissatisfaction with the ALJ's step-four determination is insufficient to obtain judicial review of the ALJ's step-four analysis. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). Further, Plaintiff's argument that the ALJ improperly delegated his responsibility to the VE at step five misconstrues the ALJ's requirements under *Winfrey*, which held that, unlike step four, it is "acceptable at step five" for the VE "to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet those demands despite the enumerated limitations." *Winfrey*, 92 F.3d at 1025.

IT IS SO ORDERED this 19th day of September, 2019.

CHARLES B. GOODWIN
United States District Judge